STATE *ex rel.* ATTORNEY-GENERAL *v.* EDWARD HINES LUMBER Co. *et al.*

[64 South. 729.]

1. CORPORATIONS. *Carrying on business in state. Subject to laws of state. Foreign corporations. Domestic corporations. Penalties. Code 1892, section 829. Code 1906, section 914.*

   Under Code 1892, section 849 and Code 1906, section 914 declaring the terms upon which foreign corporations may do business in this state and providing that such corporations shall not do or commit any act in this state contrary to the laws or policy thereof, such corporations may not do in this state what domestic corporations are prohibited from doing.

2. SAME.

   Code 1902, section 849 and Code 1906, section 914 show the legislative intention to limit the size of corporations in this state and these sections mean that foreign corporations doing business in this state may also be forced to conform to the policy of the state, expressed in its statutes.

3. SAME.

   It is the law and policy of the state to limit the holdings of all corporations, domestic or foreign, doing business in this state, but the penalties prescribed for the forfeitures of the charters of offending corporations and for the forfeiture to the state of real estate held above the value such corporations may lawfully hold, do not apply to foreign corporations.

Appeal from the chancery court of Pearl River county. Hon. R. E. Sheehy, Chancellor.

Suit by the state of Mississippi on the relation of the attorney-general against the Edward Hines Lumber Company, and others. From a judgment on demurrer for defendant, the state appeals.

The facts are fully stated in the opinion of the court.

*Ross A. Collins,* attorney-general, and *Geo. H. Ethridge,* assistant attorney-general, for the state.

Section 903 relates to foreign as well as domestic corporations. Foreign corporations have been granted no special favors by this state. Here are some of the reasons:

1. This section is placed in chapter 24 of the Code, a chapter entitled ''Corporations''—a chapter dealing with foreign as well as domestic corporations.

2. Sections 919 and 920 do not place foreign corporations in the position of being the favored ones.

3. Section 937 applies to the provisions of chapter 24 ''to all corporations whatever.''

4. Section 914 says ''foreign corporations shall not do or cannot act in this state contrary to the laws or policy thereof,'' etc.

5. Section 94, of the Constitution, clearly indicates to the legislature its duty to ''limit or restrict the acquiring or holding of lands by corporations.''

6. Section 198 of the Constitution, makes it the duty of the legislature to enact laws to prevent all trusts, combinations, contracts and agreements inimical to the public welfare. To have more than thirty-eight per cent. of the timber of this state in the hands of five foreign corporations, one of them being the real concern sued in this case, is certainly a violation of this section of the Constitution.

7. Section 197 of the Constitution, certainly does not favor foreign corporations over domestic ones. It looks upon them with suspicion.

8.   Corporations in this state are not created by special laws.   All except insurance companies and railroads are created under the provisions of chapter 24 of the Code of 1906, so the words, "of the classes," mean the same as "of the kind," and include all domestic and all foreign corporations except insurance companies and railroads.

9.   The title to section 903, "Limitations on Corporate Holdings," shows conclusively that this section places limitations on foreign as well as domestic corporations.

10.   By considering carefully section 903, you will observe that all corporations except railroad and insurance corporations are permitted to own any amount of personal property necessary, etc., for its uses and purposes. Then the section says that "every such corporation" (meaning all corporations except railroads and insurance companies), "except manufacturing corporations" (foreign and domestic) cannot own over one million dollars worth of land and then it prohibits "manufacturing corporations (foreign and domestic) from owning more than two million dollars worth of land.   Throughout the section the word "corporation" is used and used to mean "all corporations whatever," foreign and domestic.   The penalty part of the statute says "and a corporation offending," etc., meaning any corporation, foreign or domestic.   The penalty is the forfeiture of all lands in excess of the amount mentioned theretofore and also the forfeiture of the charters.   The forfeiture of the charter of a foreign corporation in Mississippi is simply the forfeiture of its right to do business in this state.   Whenever the state forfeits the charter of these concerns, it forfeits their charters as far as their right to do business in Mississippi is concerned, but no further.   While we admitted in the brief heretofore filed that this part of the section was poorly drawn, we in no way conceded that the court had no right, acting under it, to forfeit the Mississippi part of defendant's charters.   The section relates to corporations of all kinds or classes except railroads

and insurance companies doing business in Mississippi previous to the enactment of this section and also to all corporations except the two kinds excluded which may do business in Mississippi after the enactment.

11. The numerous decisions of the courts of the state show that Mississippi does not favor foreign corporations as against Mississippi corporations.

12. The Constitution, laws and court decisions do not place rewards on non-residency—on emigration.

13. The intention of the legislature was to prevent large holdings. To give the legislature the intention of allowing large land holdings by foreign corporations is to convict it of being composed of foolish men.

14. The anti-trust laws prevent monopoly and foster competition. To allow a few foreign corporations to own the timber lands of the state is tantamount to destroying the general policy of these statutes.

The same things that have been said with reference to section 903 of the Code of 1906, can be said of section 838 of the Code of 1892.

The coming of these concerns to Mississippi is to make our statutes a part of their charters. *Rothschild v. N. Y. Life Ins. Co.,* 97 Ill. App. 547; *Waters Pierce Oil Co. v. Texas,* 177 U. S. 28, 44 L. Ed. (U. S.), 657; *Consolidated Rendering Co. v. Vermont,* 207 U. S. 541; *Floyd v. National Loan Co.,* 49 W. Va. 327, 38 S. E. 653, 37 Am. St. 805, 54 L. R. A. 536; *Martin v. Ohio Stove Co.,* 78 Ill. App. 105; *U. S. Mortgage Co. v. Gross,* 93 Ill. 483; *Stevens v. Pratt,* 101 Ill. 206; *People v. Pullman Car Company,* 175 Ill. 126.

*R. H. Thompson, Edgar H. Farrar, J. M. Shivers* and *E. J. Bowers,* for appellees.

The defendant corporations are all foreign ones, all created under the laws of Illinois and all domiciled in that state. The public policy does not forbid their ownership of lands in this state in unlimited quantities and

of unlimited values, and the statutes of this state fixing a maximum value upon lands to be held by corporations apply to a certain class of domestic corporations and have no application whatever to foreign ones.

The public policy of a state is determined not by any general consideration of its supposed public interests nor by what any individual judge or sociologist or statesman may think ought to be the course a state should pursue, but it must be determined solely by what the Constitution, statutes and judicial decisions of the state make known to us. *Vidal* v. *Girard,* 2 How. (U. S.) 127-197; License Tax cases, 5 Wall. 469; *United States* v. *Trans-Missouri Frt. Assn.,* 166 U. S. 340; *St. Louis Mining Co.* v. *Montana Mining Co.,* 171 U. S. 655.

A forfeiture of the lands of defendants cannot be claimed as the result of the violation of public policy by defendants, there being no such penalty provided by any statute of the state for violating public policy, and no such thing as a forfeiture of lands at common law.

The English statutes of escheat and mortmain never had operation or effect in this state. By the ordinance organizing the Mississippi Territory and the Constitution of 1817, schedule, Sec. 5, a like provision being in all subsequent constitutions all English statutes were excluded from operation in this state. *Boarman* v. *Catlett,* 13 Smed. & M. 149.

Were the public policy as alleged in the bill established, and were the holding of land by a corporation in excess of a designated value contrary to such policy, the only remedy the state could enforce would be one to have the excess distributed to the stockholders of the offending corporation. The bill in this case is not framed to accomplish that end; considered in such light it is in divers respects insufficient and demurrable. The stockholders are not parties to the suit, the bill fails to show who they are, and distribution to them could not, therefore, be decreed. Treating the bill as one for that purpose,

the general demurrer was properly sustained, and, in the absence of an application to amend, and there was none in this case, the suit was properly dismissed.

And, besides, should the state desire to have distribution of an excess of lands held by any corporation, the proceeding would necessarily be at law by *quo warranto* and not by a suit in equity. Such a case would be within Code 1906, section 4017, paragraph tenth, providing that an information in the nature of a *quo warranto* shall lie whenever any nonresident alien or corporation (meaning nonresident corporation) shall acquire or hold lands contrary to law; and the chapter of the Code entitled "*quo warranto*" provides the necessary procedure in such cases and for bringing the creditors, including the stockholders, of the offending corporation before the court. A court of equity would not in any case, except in an ancillary way as provided by Code 1906, section 4032, administer the law governing a *quo warranto* proceeding, and not at all until the proper judgment had been obtained at law.

The main proposition in this case, stated succinctly, is this: By virtue of comity between nations and the states of this Union, foreign corporations whose charters empower them to acquire and hold lands, are empowered to acquire and hold lands in Mississippi and the state has not up to this time directly or indirectly placed any limitation upon the power.

The case is reduced to this naked proposition: Do the provisions of section 838 of the Code of 1892, or of section 903 of the Code of 1906, during the operation of which the lands in question were acquired, apply to foreign corporations?

The Code of 1892 remained operative until October 1, 1906. During its operation nearly all the lands were acquired by the defendants. Exhibit No. 8 to the bill shows that only twenty five thousand, seven hundred and sixty-five acres of land, valued at fifty-three thousand and sixty dollars, were acquired after October 1, 1906.

106 Miss. 50

It will, therefore, be necessary to discuss separately
the application, if any, to foreign corporations, of sec-
tion 838 of the Code of 1892, and the application to them,
if any, of section 903 of the Code of 1906.

Prior to the adoption of the Revised Code of 1857 there
was no general statute in Mississippi for the incorpora-
tion of companies for any purpose whatever. All corpo-
rations were created by special statute.

An examination of the statutes prior to 1857 will not
show any public policy in the state of Mississippi to re-
strict land holdings by corporations. The majority of
the statutes, if they show anything, show a policy to limit
the power of corporations created by the state to hold
both real and personal property, i. e., to limit the ca-
pacity of corporations to acquire property irrespective
of whether it was real or personal.

The provisions of the Corporation Act of 1857 were ex-
tremely narrow. Chapter 35, Revised Code 1856, p.
290.

It will be noted that the limitation (Art. 5) of this stat-
ute was not confined to real estate, but applied with
equal force to personal estate, and the latter was as lia-
ble to forfeiture to the state as the former. It is further
to be noted that the limitation was not confined to prop-
erty having a *situs* in the state of Mississippi.

The statute on its face was a grant of power to cor-
porations organized under the chapter and to those or-
ganized under some special act of the legislature which
failed to grant such power, and the power granted to hold
real and personal estate, irrespective of *situs*, with limi-
tation on the power granted. It was not a general pro-
hibition against corporations owning real and personal
estate in excess of a certain limit.

By the revised Code of 1871, chapter 55, the pertinent
provisions of chapter 25 of the Code of 1857, were re-
enacted *verbatim.* And they were re-enacted by the Code
of 1880, chapter 38. And thus the law remained until

the passage of the act of March 7, 1882 (Laws 1882, p. 50), which expressly provided that "all corporations created under this act and said chapter 38" should have in addition to the powers granted by Code 1880, said chapter 38, the power to "hold and own real and personal property to any amount and to sell, exchange and encumber the same."

This liberal statute remained in force until the Code of 1892 became operative, November 1, 1892. During the whole period from 1857 to 1890 (when the Constitution adopted in that year negatived the power of the legislature to charter corporations by special act) the legislature of the state chartered large numbers of corporations.

In view of legislation, general and special, from 1803 to 1890, may we not say, as the supreme court of Mississippi said, in *Taylor* v. *Alliance Trust Company,* 71 Miss. 121: "It is idle to talk of the existence of a public policy against the ownership of lands by corporations in the state of Mississippi."

By section 84 of the Constitution of 1890, it was provided: "The legislature shall enact laws to limit, restrict or prevent the acquiring and holding of land in this state by nonresident aliens, and may limit or restrict the acquiring or holding of lands by corporations."

The first clause of this section as to nonresident aliens is mandatory; the second clause thereof is permissive. As to nonresident aliens there is no discretion, as to corporations the whole subject is left to the discretion of the legislature.

The legislature did not thereafter deal with the subject of corporations until the Code of 1892 was adopted. Chapter 25 of that Code is entitled "Corporations" and it will be immediately noted that section 838 thereof, the only one fixing limitation on corporate ownership of lands, was prospective only. It was confined to corporations "organized under this chapter," which means nec-

essarily "to be organized" under this chapter. It did not undertake to extend its provisions to the corporations previously organized under the provisions of the Act of 1882, the Code of 1880, the Code of 1871, or the Code of 1857, or to any of the corporations organized by special charter. Its provisions did not apply to insurance companies to be organized under chapter 65 of the same code which were given power "to hold, purchase, receive and enjoy real and personal estate, and the same or any part thereof, to sell, rent, lease, mortgage, or otherwise dispose of or encumber, and to hold and enjoy real estate in fee simple or otherwise" (Sec. 2337) without limit, nor to railroad companies to be organized under chapter 112, of the same code, which were given powers (Sec. 3578) as to real and personal holdings as extensive as those granted to insurance companies, also without limit.

It will also be noted that this section, like the corresponding sections in the Codes of 1857, 1871 and 1880, was as much directed against the holdings of personal property as against the holdings of real estate, and that, like them, it is not confined to holdings within the limits of the state of Mississippi, but to such holdings wherever situated. By the provisions of this statute, as well as by the provisions of its predecessors in the Codes of 1857, 1871 and 1880, a corporation organized under it which held real or personal property anywhere in excess of its charter powers would forfeit its charter and, so far as the laws of Mississippi could be effective, forfeit the excess property so held to the state of Mississippi.

It is manifest also that this statute is not a general statute passed to prohibit or restrain all corporate holdings of lands beyond a certain limit within the state of Mississippi, in accordance with the discretionary power given to the legislature by section 84 of the Constitution of 1890, but a mere revival of the old clause contained in the analogous chapters of the previous codes, and, like

them, it was a mere limitation on the grant of power to hold real and personal property made to corporations organized under the chapter of which it was a part and to which it belonged.

The section, Code 1892, section 838, remained unchanged until 1897, when an act was passed authorizing corporations for agricultural purposes to be organized within one year from its date, and authorizing such corporations to receive in payment of their stock lands and property without limit. This statute was notoriously framed in the interest of a private individual, the late James Richardson, who desired to concentrate his large plantation holdings into a corporation; but the terms of the act were such that all the agricultural lands in the state of Mississippi could have been held by one such corporation. With this diversion excepted, section 838, Code 1892, remained unchanged until the Code of 1906 became operative, November 1, 1906.

Section 903, Code 1906, removes all limitations from the holding of personal property by corporations to which the provisions of the act apply, and raises the limit on real estate as to manufacturing companies from one million to two million dollars, excludes buildings, machinery and other fixtures from the valuation of land for the purposes of the statute, excludes increases in the value of land after its acquisition, and increases the period of land holding taken in payment of or as security for debt from five to ten years.

In order to make it perfectly manifest that the increases in power provided in this section should not be prospective only, but that they should be retrospective also, and that every corporation in the state organized under the laws of the state, of the same character as those that could be organized under this chapter, whether organized under "this chapter" as it previously stood or organized under special statutes, should have the benefit of these increased powers, the first sentence was

made to read: Every corporation of the classes to be or heretofore created under the provisions of this chapter of the laws of the state." Let us break this sentence up into its alternatives and see what it covers. We find as follows: 1. Every corporation of the classes to be created under the provisions of this chapter. 2. Every corporation of the classes heretofore created under the provisions of this chapter, or the laws of this state.

The clear object and purpose of this language was to put all corporations created by the state of Mississippi of the same kind upon identically the same footing, and to avoid the anomaly that would arise in having in the state: First, mercantile and agricultural corporations organized under the corresponding chapter in the Code of 1892, which would forfeit to the state all their real and personal property over two hundred and fifty thousand dollars in value, and similar corporations organized under the chapter of the Code of 1906, which could own an unlimited amount of personal property and one million dollars in lands; second, manufacturing corporations organized under the chapter in the Code of 1892, which would forfeit to the state all their real and personal property over one million dollars in value, and similar corporations organized under the chapter in the Code of 1906, which could own an unlimited amount of personal property and lands valued at two million dollars.

If we interpret the term "the laws of this state" to mean both general and special laws, then it was the intention of the legislature to apply the provisions of the section, Code 1906, section 903: First, to all the corporations of the same class organized under the Act of 1882, in force for ten years, which under that act had not claimed the unlimited power to hold and own both lands and personal property, but had expressly, under their charters, voluntarily limited their own powers; second, to all the corporations of the same classes organized under special acts of the legislature with limitations in

their charters to hold lands and personal property below the limitation specified in section 903. Of course it was beyond the power of the legislature to diminish the powers of any corporation organized under general laws from 1880 to 1890, at least, as no such right was reserved during that period either in the Constitution or the general laws of the state, or to diminish the powers of any corporation chartered by the legislature since 1871 or prior to 1857. As to corporations specially chartered between 1857 and 1871 their powers could not be diminished where the charters negatived the legislative rights so to do, as many of them did.

Let us now examine the statutes of the state in regard to foreign corporations. The several statutes, Code 1857, art. 30; Code 1871, par. 2416; Code 1880, par. 1024; Code 1892, par. 849 and Code 1906, par. 914, are to all intents and purposes, so far as they can have application to this case, the same.

It will be noted that the state of Mississippi has adopted no constitutional provision and has passed no statute, as many of the states have done, declaring that foreign corporations shall not do business in the state unless a similar corporation could be organized under the laws of the state, or declaring that foreign corporations shall have no other or further or greater powers and rights than those enjoyed by similar corporations organized under the laws of the state of Mississippi. The authorities cited by appellant's counsel in the court below are based on enactments of that character, but Mississippi has been content to let the law of comity operate to its full extent.

It is true that when operating under their own charters, foreign corporations are not permitted to do any act contrary to the law or the public policy of the state, and that when these laws are penal, or general prohibitory laws with penal clauses attached, they are liable to the penalties denounced. But what is the rule of

comity under which foreign corporations may exercise their charter powers in another state? The leading case on this subject is that of *Cowell* v. *Springs Co.,* 100 U. S. 55, wherein it is said: "The answer to this position is found in the general comity which, in the absence of positive direction to the contrary, obtains through the states and territories of the United States, by which corporations created in one state or territory are permitted to carry on any lawful business in another state or territory, and to acquire, hold and transfer property there equally as individuals. If the policy of the state or territory does not permit the business of the foreign corporation in its limits, or allow the corporation to acquire or hold real property, it must be expressed in some affirmative way; it cannot be inferred from the fact that its legislature has made no provision for the formation of similar corporations or allows them to be formed only by general law." The same doctrine is announced in *Christian Union* v. *Yount,* 101 U. S. 352. See, also, *Wells Fargo Co.* v. *Northern Pac. R. R. Co.,* 23 Fed. 474; *Reorganized Church* v. *Church,* 60 Fed. 942; *American, etc., Co.* v. *Farmers, etc., Co.,* 73 Fed. 963; *Stevens* v. *Pratt,* 101 Ill. 224; *Female Academy* v. *Sullivan,* 110 Ill. 384; *People* v. *Fidelity Casualty Co.,* 153 Ill. 33; *Torpey* v. *Salt Co.,* 5 Utah, 503.

From the review of the legislature of the state we can confidently deduce the following conclusions: 1. There never was, in the state of Mississippi, any public policy prohibiting corporations of her own creation from holding lands or limiting such corporations in the amount of their holdings.

2. The statutes pointed to as exhibiting such a public policy were directed in terms as much against the holding of personal property as against the holding of real estate, and, properly construed, were nothing more than limitations on grants made by the state to certain of her own corporations organized under particular statutes,

coupled with penalties directed against such particular corporations for exceeding the powers granted.

3.   The limitations on the powers so granted to these particular corporations were not confined to lands and property situated within the limits of the state of Mississippi, but to lands and personal property, no matter where situated.

4.   The state of Mississippi has never indulged in any hostile discriminatory legislation against foreign corporations, except perhaps, foreign railroads, nor has it laid down any rules that would limit the application of the doctrine of comity that prevails among the states of this Union, under which a corporation of one state may exercise its corporate powers in another state, although there may not be any such domestic corporations in that state, and although the corporations of that state of the same kind may not have the same or as extensive powers as those of the foreign corporation, and that a foreign corporation will not be excluded from a state or its acts therein invalidated unless under some statute of the state clearly condemning the acts and doings of the foreign corporation, or under a public policy deduced from the general course of legislation or the settled decisions of its court of last resort.   As regards the application of statutes imposing penalties and forfeitures, it is clear on general principles that such statutes do not embrace foreign corporations unless plainly applicable to them.

Code 1892, par. 838.   The section on its face applies only to "corporations created under this chapter."   It therefore does not apply to all Mississippi corporations. It does not apply to railroads or to insurance companies which were to be organized under different chapters.   It does not apply to all the numerous domestic corporations created by special act of the legislature before the Constitution of 1890.   Being prospective only, it does not apply to corporations created and then existing under the Act of 1882, or under the provisions of previous codes.

It evidently does not apply to the religious societies or congregations or ecclesiastical bodies, whose rights to real property are specifically fixed in section 859a, and whose organization is provided for in section 859.

It is therefore not a general prohibitory and penal statute. It is clearly a grant of the corporate power to hold and own real and personal property to corporations thereafter "created under this chapter," coupled with a limitation on such power and imposing a penalty on the violation of the limit by the corporations to which the grant is made. It does not apply to foreign corporations by its terms. It cannot apply to them by its substance, because it purports to be a grant of corporation power to be exercised generally both within and without the state of Mississippi, and such grants can be made to corporations only by the state of their creation.

That it does not apply to foreign corporations is further clearly demonstrated by the character of the penalty imposed. The penalty is, "and a corporation offending against any of these provisions shall forfeit its charter, and shall also forfeit all property, real and personal, above the amount it may lawfully hold to the state." The penalty is one penalty, divided into two indissolubly linked parts, a forfeiture of charter and also a forfeiture of the excess of the property held. The court is given no discretion to impose part of this penalty, as, for instance, in one case to forfeit the charter and to refuse to forfeit the excess of property holdings, and in the other case to refuse to forfeit the charter and to forfeit the excess of property holdings.

But it may be argued that section 838 applies to foreign corporations, because section 860 says: "The provisions of this chapter, when not limited by their terms, shall apply to all corporations whatever, where the subject-matter is not elsewhere prescribed," and that the term "all corporations whatever" includes foreign corporations. The answer to this is two-fold: First, that

section 838 is "limited by its terms" to corporations created under the chapter; second, that it is a general rule of construction that the general words, "every corporation," "a corporation" and "no corporation," when used in a statute, refer only to domestic corporations, unless the subject-matter and the context show the contrary. *Matter of Prime,* 136 N. Y. 347; *Lancaster v. A. & I. Co.,* 140 N. Y. 576; *Building, etc., Assn. v. Pinkston,* 79 Miss. 483; *Vanderpool v. Gorman,* 140 N. Y. 563; *Hollis v. Drew Seminary,* 59 N. Y. 166; *Matter of Lampson,* 161 N. Y. 511; *Helena, etc., Transmission Co. v. Spratt* (Mon.), 88 Pac. 773; *State v. Fidelity & Casualty Co.,* 39 Minn. 738; *Plimpton v. Biglow,* 93 N. Y. 592; *Wright v. Douglas,* 10 Barb. 97; *Standard Bank v. Garfield Bank,* 56 Hun (N. Y. App. Div.), 47; *Salt Marsh Co. v. Spalding,* 147 Mass. 227; *Armour Bros. Bank v. St. Louis National Bank,* 113 Mo. 12; *Caffery v. Choctaw Coal & Mining Co.,* 95 Mo. App. 182; *Nitz v. National Life Association,* 130 Ala. 413; *Santa Yuba Water, etc., Co. v. Rosa,* 80 Cal. 333.

Code 1906, section 903. By comparing section 838 of the Code of 1892, and section 903 of the Code of 1906, it becomes apparent that the object and purpose of the new section was to liberalize the provisions of the former Code (a) by striking out all limitations on the right to hold personal estate, (b) by enlarging the powers of corporations to hold real estate, and (c) by extending these enlarged powers to all similar corporations theretofore created under the corresponding chapters in previous codes of the laws of the state.

There is absolutely no difference in meaning between the words, "Every corporation created under this chapter" in section 838, Code 1892, and the words of section 903, Code 1906, "Every corporation (of the classes) to be created under this chapter," or the words, "Every corporation (of the classes) heretofore created under the provisions of this chapter," etc.

In the Code of 1892, the words: ''Every corporation created under this chapter'' meant, as shown in section 832, ''corporations for every lawful purpose and of every kind, except for the construction and operation of a railroad, other than street railroads, and the carrying on of an insurance business.''

In the Code of 1906, the words: ''Every corporation (of the classes) to be created under this chapter'' mean, as shown by section 897, ''corporations for every lawful purpose and of every kind, except for the construction of a railroad, other than street railroads, and the carrying on of an insurance business, excluding mutual insurance associations organized for the purpose of insuring the property of its own members only.''

The words in this section, ''Every corporation (of the classes) heretofore created under this chapter or the laws of this state,'' mean the corporations that had been theretofore organized under the Code of 1892 and previous Codes, and of the Acts of 1882, the object and purpose of the section being retroactive as well as prospective and to extend its liberalized provisions to all such previously organized corporations, and to establish a uniformity of powers among the same character of corporations throughout the state, irrespective of the statute under which they were organized. With the exception of the liberalizing provisions, the form and substance of section 903 of the Code of 1906, is the same as the form and substance of section 838 of the Code of 1902. It remains a grant of power to certain domestic corporations only to hold lands and personal property with a limitation on the exercise of the power. It does not by its terms relate to or embrace foreign corporations. It cannot be construed as a grant of power to foreign corporations with a limitation on the grant, because the state had no power to make such grant to a foreign corporation. It does not confine its operation to property within the state of Mississippi. It does not purport

to be a general prohibitory law directed against all corporations. The penal clause, unadapted to foreign corporations and applicable by its nature to domestic corporations only, remains the same.

No reason can be or has been suggested that the legislature used the words "every corporation 'of the classes' to be or heretofore created under this chapter," instead of the words "every corporation to be or heretofore created under this chapter," with the object and purpose of extending the provisions of the section to foreign corporations. The very moment one concludes that section 838 of the Code of 1892, does not refer to foreign corporations, the conclusion becomes irresistible that section 903 of the Code of 1906 does not refer to them. Every argument that applies to the one applies with equal force to the other, even section 937 of the Code of 1906, declaring the extent of the provisions of the chapter, simply reproduces section 860 of the Code of 1892. The point we insist upon is that by the terms of the section its provisions are limited and do not embrace foreign corporations.

Again the provisions of the Code of 1906 on the subject of the domestication of foreign corporations, sections 915, 916, 917 and 918 show that domestication was necessary to make such corporation "entitled to all the rights and privileges and be subject to all the duties, obligations, restrictions, liabilities and limits and penalties conferred and imposed by laws of this state upon similar corporations incorporated under the laws of this state."

It is not claimed that any of the defendant corporations are domesticated under this statute.

We submit that, in the case of the provisions of this statute, a foreign corporation doing business and owning property in Mississippi by comity only, on the principles of which we have shown the state has never infringed by any of her legislation, could not be subjected to any penalties or limits which are not clearly or by express and

unambiguous legislation imposed on foreign corporations as such, or specifically on both foreign and domestic corporations.

We again suggest that it is absurd to say that the state of Mississippi in her known economic condition intended by section 903 of the Code of 1906, either to exclude all the great banks and industrial corporations of the world from her limits, or to set a trap for them, so that if they came into the state and acquired lands, being already the owners of lands outside of the state to the limit permitted to certain of her own corporations, they would forfeit all such lands to the state. If such were the law, none of the great manufacturing companies of iron, or steel, or sewing machines, or cars, none of the great foreign sawmill and wood manufacturing companies could establish themselves within her limits.

In addition to all these arguments, we call the attention of the court to the fact that the statutes relied on are penal statutes, carrying with them a confiscation of property, and that such statutes are strictly construed, and will not be enforced beyond their clear meaning and import.

We have shown above that the penalty declared in section 838, Code 1892, and section 903, Code 1906, is one single penalty, declaring "and a corporation offending against any of these provisions shall forfeit its charter, and shall also forfeit to the state all real estate above that which it may lawfully hold."

This suit is not brought to enforce the whole penalty. The bill does not seek to forfeit the charters of the defendant corporations. It seeks to impose the last clause of the penalty only. The first clause of the penalty cannot be enforced against a foreign corporation. If the penalty be one and the first clause cannot be enforced against foreign corporations, how can the second clause of the penalty be enforced? Whence could the court derive its authority to split this penalty and enforce,

not the main forfeiture, that of the charters, but only the adjunct forfeiture, that of excess land holding?

The words of the statute prescribing the penalty conclusively prove that the section applies only to domestic corporations, created under this chapter. The words "and shall also" in the prescribed penalty are significant. They show that the penalty is one and indivisible. This court, therefore, could not render a decree against a foreign corporation, without violating the statute because it cannot forfeit its charter, and to decree in favor of the state would be to violate the statute by declining to inflict the only, the single, the prime statutory penalty prescribed. The word also means "in addition to," see *Montgomery* v. *McPherson,* 86 Miss. 4, and the authorities cited by counsel for appellee in that case, approved by the court. If, as is clearly the case, the court cannot forfeit the charter of a foreign corporation, how can it inflict a penalty in addition thereto?

The proposition of the state is that defendants' lands shall alone be decreed forfeited. Would such a penalty be in addition to anything else?. Of course it would not, and as forfeiture of lands can be decreed only in addition to something that is beyond the power of the court, it cannot be decreed independently of that to which it is a mere addition. The words "and shall also" cannot be stricken from the statute by the court at the mere behest of the state.

Cook, J., delivered the opinion of the court.

It is our opinion that this case is to be decided by a construction of the statutes of our state, and that it is unnecessary to review the decisions of the supreme court of the United States, and of the several states, touching the general law of comity between the states.

Section 849 of the Code of 1892, and section 914 of the Code of 1906, declare the terms upon which foreign corporations may do business in this state, and these stat-

utes likewise prescribe what such foreign corporations may not do in these words: "But such foreign corporations shall not do or commit any act in this state contrary to the laws or policy thereof, and shall not be allowed to recover on any contract made in violation of law or public policy." A foreign corporation may conduct any business in this state which it could conduct in the state which created it, provided such business is not outlawed by the legislature of this state.

It seems clear to us that, inasmuch as foreign corporations "may not do or commit any act in this state contrary to the laws or the policy thereof," it necessarily follows that such corporations may not do in this state what domestic corporations are prohibited from doing. The policy of this state with reference to limitations upon the value of corporate holdings is expressed in our statutes, and while it may be said that section 849 of the Code of 1892 and section 914 of the Code of 1906 are declaratory of the common-law rule of comity, yet it seems to us that, the laws and policy of this state being to limit the value of the holdings of domestic corporations, and to penalize domestic corporations for exceeding the statutory limit, it was the intention of the legislature to apply to foreign corporations the same limitations; otherwise, this policy could be thwarted by the simple expedient of incorporating in other states.

If the limitation is not an expression of the state's policy, binding upon all corporations and enforceable by a proper proceeding, foreign corporations would be free to gobble up all of the lands of the state, and thus defeat the effort of the legislature to carry out a wise and salutary purpose, clearly indicated by statutes forbidding corporations subject to its control from acquiring lands in excess of a fixed limit of value. There can be no doubt of the legislative intention to limit the size of corporations in this state, and it is difficult to imagine what laws and policies are referred to in section 849,

Code 1892, and section 914, Code 1906, unless we construe these sections to mean that foreign corporations doing business here may also be forced to conform to the policy of the state, expressed in its statutes.

Having reached this conclusion, the next question is: Do the penalties prescribed by section 838 of the Code of 1892 and section 903 of the Code of 1906 have any application to foreign corporations? We are unable to discover any substantial difference in the two sections. Section 838, Code of 1892, uses the language, "every corporation created under this chapter," while section 903, Code of 1906, refers to "every corporation of the classes to be or heretofore created under the provisions of this chapter or the laws of this state." Section 838, Code of 1892, refers to prospective corporations, while section 903, Code of 1906, refers not only to corporations to be created, but also to corporations which had already been created under the provisions of the Code of 1892. The chapters of the two Codes—1892 and 1906—entitled "Corporations" in terms exclude certain mentioned corporations, and the words "of the class," found in section 903, Code of 1906, refer to corporations of the class controlled by chapter 24 of the Code of 1906, and exclude railroads and insurance corporations. For present purposes, therefore, we are of opinion that the Code of 1892 and the Code of 1906 mean one and the same thing.

It is certain that the courts of this state cannot forfeit the charters of foreign corporations doing busines in this state, and to this extent at least the court is powerless to enforce against appellees the penalty prescribed by our statutes. The statutes in question clearly make the forfeiture of charters the main penalty, and in addition thereto it is further provided that the offending corporation "shall *also* forfeit all property, real and personal, above the amount it may lawfully hold, to the state." No authority can be found in the statutes for imposing a part of the penalty; but, on the contrary, the language

106 Miss. 51

is plain, unambiguous, and mandatory—that the penalty of forfeiture of charter and forfeiture of property must each be imposed upon corporations violating the law. The penalty prescribed by the statutes being in part unenforceable, and the sections fixing the penalty in terms limiting its application to corporations to be or hereafter organized under the laws of this state, both concur to negative the idea that it was the legislative purpose to apply that part of the penalty appropriate to foreign corporations to such corporations, while the entire penalty should aply to domestic corporations.

It is a fundamental rule of construction that penal statutes are to be strictly construed by the court, and it is not within the province of the judicial department to extend the terms of such statutes beyond the subjects selected by the lawmaking department for their application. It would have been an easy matter for the legislature to have provided that foreign corporations acquiring or holding lands in this state in excess of the value fixed for the holdings of domestic corporations should be subject to the penalty of forfeiture of such excess to the state, and such other appropriate penalties as the legislature might see fit to prescribe, but no such penalties were prescribed. In section 914 of the Code of 1906, which is a transcript of section 849 of the Code of 1892, both of which refer to foreign corporations alone and provide the penalty for violation of the laws and policy of this state by such corporations, nothing appears to indicate that the drastic penalties imposed by statute on domestic corporations should apply to foreign corporations doing business here.

Section 915, 916, and 917, Code 1906, seem to emphasize the correctness of our views upon the legislative intent. It being apparent that foreign corporations were not in terms subject to the penalties denounced by section 838, Code 1892, and section 903, Code 1906, the three above-mentioned sections were added to chapter 24, Code of

1906.  It will be noted that section 917, Code 1906, concludes with this sentence, viz.: "Any corporation shall, upon compliance with this law, become to all intents and purposes a corporation of this state, and shall be entitled to all the rights and privileges and be subject to all the duties, obligations, restrictions, liabilities, limits and penalties conferred and imposed by laws of this state upon similar corporations incorporated under the laws of this state." It is evident that foreign corporations, complying with the law providing for their domestication would become subject to the penalties prescribed by section 838, Code 1892, and section 903, Code 1906, and we are of opinion that foreign corporations not domesticated are necessarily excluded from the operation of these sections. "*Ex pressio unius est exclusio alterius.*" It would seem that, while the mind of the legislature was directed to foreign corporations, if it was the purpose to place them in the same category with domestic corporations, something would crop out in the particular section controlling such corporations indicative of this purpose.

The natural inquiry will be made: Why did the legislature impose a penalty upon its own creatures, and not impose the same penalty on the corporations of other states? Any attempt to conjecture reasons might be wide of the mark, and it can only be said that it was entirely within the power of the lawmaking department to fix the terms upon which foreign corporations of the character here involved might do business in the state, or that department of the government might exclude such corporations from the state entirely. This suit has been pending for several years, and the question as to whether or not the penalty sought to be enforced thereby was applicable to corporations of the character here involved has been thus called to the attention of the legislature, and yet, so far as we are advised, no effort has been made in the legislature to translate the state's contention here

into a statute which would put the question beyond controversy.

To restate our views, we will say that it is the law and the policy of this state to limit the holdings of all corporations, domestic or foreign, doing business in this state; that the penalties prescribed for the forfeiture of the charters of offending corporations, and for the forfeiture to the state of real estate held above the value such corporations may lawfully hold, do not apply to foreign corporations. The state is not without a remedy entirely adequate to enforce its public policy, but the state has not in this case resorted to that remedy.

It being the main purpose of this proceeding to have the court decree a forfeiture of real estate, we think the demurrer to the bill of complaint was properly sustained.

*Demurrer sustained.*